IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARK VON ROSING, and VALUE TEAMS APS,**<br>            Plaintiffs,<br><br>           v.<br><br>**SAP AG,**<br>**SAP AMERICA, INC.,**<br>**DOES I THROUGH X,**<br>**ROE ENTITIES XI THROUGH XX,**<br>            Defendants. | **CIVIL ACTION**<br><br><br><br>NO.  13-6022 |

**DuBOIS, J.**                                                                                                              **March 18, 2014**

**M E M O R A N D U M**

**I.     INTRODUCTION**

Plaintiff Mark von Rosing is a consultant, professor, and author on the subject of enterprise modeling and architecture, and he is founder of plaintiff Value Team ApS.  Defendant SAP America, Inc. ("SAP") develops software and training materials on subjects relating to enterprise modeling.  Plaintiffs allege that defendants SAP, SAP AG, and unidentified Doe and Roe defendants misappropriated plaintiffs' intellectual property and are liable for breach of contract or, alternatively, for various torts and statutory violations.  Defendant SAP[1] filed the instant Motion to Dismiss Counts B Through I of the Complaint and to Strike Defendants Does I through X and Roe Entities XI Through XX.  For the reasons stated below, the Court grants in part and denies in part SAP's Motion.

---

[1] Counsel for defendant SAP America, Inc., take the position that defendant SAP AG has not yet been served.  The Court notes that, according to the docket, those attorneys have entered their appearances for SAP AG.

1

## II.     BACKGROUND[2]

In 2001, plaintiff Mark von Rosing formed Value Team ApS and began working for companies such as IBM, Air France, Dutch Railway, Petronas, and Saudi Arabia Oil, "on improving [the companies'] software and . . . hardware," in an area described as "enterprise modeling," and "enterprise architecture."[3]  Compl. ¶ 14.

SAP is a company which creates software designed to help businesses "[l]everage role-based access to critical data, applications, and analytical tools."  *Id.* ¶ 20.  "The cost and complexity of implementing SAP software is one of the major hurdles for SAP's software sales efforts," and, because of that, SAP created ASAP, which is an "implementation tool" that allows SAP users to customize SAP's software in order to "reduce and streamline" the burdens on customers.  *Id.* ¶¶ 8-9.

In the fall of 2009, Ann Rosenberg, a SAP employee, began working with von Rosing "to develop training materials for SAP's customers and employees in subjects matters related to process management, value management, and information management," a subject which is referred to collectively as business process management ("BPM").  *Id.* ¶ 15.  On March 3, 2010, Rosenberg "sent an email to a group of people informing them of SAP's new BPM curriculum and certification," in which she listed von Rosing as a "subject matter expert[]."  *Id.* ¶ 17.  In April 2010, von Rosing taught the BPM course at SAP's offices in Holland.  *Id.*

---

[2] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiffs' Complaint to be true.
[3] "Enterprise modeling" is described in the Complaint as improving a companies' "software and service workflow by integrating concepts regarding abstract representations, descriptions, and structural definitions."  Compl. ¶ 14.  "Enterprise architecture" is described as the process of improving "the conceptual, logical, and physical relationships of objects within [a companies'] hardware, systems, and platforms."  *Id.*

2

In March of 2011, von Rosing engaged in a series of phone calls with, *inter alios*, Jan Musil of SAP regarding "SAP's desire to obtain von Rosing's input into ways to improve ASAP." *Id.* ¶ 24. A March 31, 2011 email from von Rosing to Hermann Reiter of SAP confirmed the substance of the conversations, with von Rosing noting that he would "provide general consulting services 'without pay'" for SAP "so long as SAP agreed that SAP field service will try to position [von Rosing] where possible [for work on] SAP projects." *Id.* On April 1, 2011, Reiter responded, stating "Hello Mark, Yes, it summarizes our discussion." *Id.*

In April and March of 2011, after phone calls with SAP, von Rosing "realized that the assistance SAP wanted him to provide was so detailed that it would require him to use and disclose [his] [intellectual property ("IP")] to SAP, and that his initial agreement with SAP did not require disclosure of von Rosing's IP or define SAP's obligations to protect it." *Id.* ¶ 25. Accordingly, von Rosing had additional discussions with Musil about his concerns, after which they reached an agreement ("IP Agreement") whereby von Rosing would "provide the detailed assistance SAP wanted on ASAP 7.2 if SAP would agree to protect von Rosing's IP and make sure he was paid for the disclosure and use of his IP." *Id.* On April 29, 2011, von Rosing sent SAP an email stating specific terms regarding protection of his IP, which included the provisions that the "material c[ould not] be systematically 'given away' . . . without explicit coordination and written permission," and that the "material c[ould not] be shared or used as part of [] engagement efforts by companies that ha[d] not paid." *Id.* ¶ 29.

On May 11, 2011, SAP sent von Rosing a reply email stating that SAP will "add all the mentioned points" and that "your IP statement that [SAP] will add and the SAP Code of Conduct around IP and copyrighted material should ensure that [SAP is] fully complaint to the agreement discussed." *Id.* ¶ 28. Over the next week, von Rosing had several phone calls with SAP in

3

which he shared his ideas regarding concepts for ASAP 7.2. *Id.* ¶ 29. Von Rosing also delivered his ideas to SAP "in the form of over 200 proposed substantive additions to ASAP 7.2 as text, charts, and templates." *Id.* ¶ 30.

Sometime thereafter, in 2011, SAP "widely distributed von Rosing's IP for free by including it in ASAP 7.2 and posting ASAP 7.2 on SAP's Service Marketplace where . . . hundreds of thousands of SAP's customers, partners, and any other third parties could download and use ASAP 7.2, including von Rosing's IP, free of charge." *Id.* ¶ 31. Over the next several months the parties attempted to negotiate an agreement regarding protection of von Rosing's IP, to no avail. *Id.* ¶¶ 31-36. The parties ceased communicating on August 6, 2012. *Id.* ¶ 36

Von Rosing later learned that on September 28, 2012 SAP had "issued a training certificate to an individual named Freek Stoffel," stating that "von Rosing certified Stoffel's training in enterprise architecture," and which was ostensibly signed by von Rosing "in his capacity as a professor at the University of Copenhagen and as the 'head of SAP University Alliances'" *Id.* ¶ 37.

On October 15, 2013, plaintiffs filed suit in this Court. Plaintiffs' Complaint alleges nine counts, each in the alternative: (1) Breach of Express Written Contract, (2) Breach of Express Oral Contract, (3) Breach of Implied Contract, (4) *Quantum Meruit*; Unjust Enrichment, (5) Misappropriation of Ideas, (6) Unfair Competition, (7) Fraudulent Misrepresentation, (8) Negligent Misrepresentation, and (9) Unauthorized Use of Name. On December 20, 2013, SAP filed the instant Motion to Dismiss.

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a complaint, a defense of "failure to state a claim upon which relief can be granted" may be raised

by motion to dismiss. To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level." *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In *Twombly*, the Supreme Court used a "two-pronged approach," later formalized in *Iqbal*. *Iqbal*, 556 U.S. at 679; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint — the well-pleaded, nonconclusory factual allegation[s]" — to determine whether it states a plausible claim for relief. *Id.*

## IV. ANALYSIS

SAP makes four arguments in its Motion to Dismiss. First, SAP argues that several of plaintiffs' claims should be dismissed because an express written contract governs this dispute. Second, SAP argues that even if such claims remain, several must be dismissed because plaintiffs have failed to state a claim. Third, SAP argues that because plaintiffs only state a

5

claim for breach of express contract, plaintiffs' damages should be limited to contract damages. Finally, SAP argues that the Roe and Doe defendants should be stricken. Each argument is addressed in turn.

### A. Alternative Theories of Recovery

SAP argues (1) that plaintiffs' claims for implied contract and unjust enrichment are barred because an express contract governs the dispute, and (2) that plaintiffs' claims for misappropriation of ideas, unfair competition, fraudulent misrepresentation, and negligent misrepresentation are duplicative of his contract claims and thus are barred under the economic-loss doctrine and gist-of-the-action doctrine.

The Court rejects both arguments because each presupposes that the validity and scope of the alleged contracts at issue are undisputed. That is not the case. While the parties do not dispute the existence and scope of von Rosing's initial March 31, 2011 agreement, they do dispute the validity and scope of the IP Agreement, executed in April or May of 2011. *See, e.g.*, Def. SAP's Reply 1 (ECF No. 27) ("The dispute is whether the parties agreed to modify the contract as it related to certain 'IP' in alleged emails."). Until the existence and scope of the IP Agreement is determined, the Court cannot assess whether an express contract governs this dispute or whether the economic-loss doctrine and gist-of-the-action doctrine apply. Thus, plaintiff may plead his contract and tort theories in the alternative until discovery permits the Court to rule on these issues. *See, e.g.*, *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) ("A plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment in cases where there is a question as to the validity of the contract in question." (internal quotation marks omitted)); *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 567 (D.V.I. 2004)

(DuBois, J.) ("It is especially inappropriate to dismiss a tort claim as duplicative of a contract claim when the contours of the agreement at issue are not clear.").

### B. Failure to State a Claim

SAP argues plaintiffs' fail to state a claim for (1) Breach of Express Oral Contract, (2) Misappropriation of Ideas, (3) Unfair Competition, (4) Fraudulent Misrepresentation, (5) Negligent Misrepresentation, and (6) Unauthorized Use of Name. The Court addresses each in turn.

#### 1. *Breach of Express Oral Contract*

SAP argues that plaintiffs' claim for breach of express oral contract must be dismissed because (1) "[a]ll of the contract formation communications alleged in the complaint were written" and (2) "[p]laintiffs never explain how the terms of the alleged written and oral contracts differ or what consideration was exchanged in the alleged oral contract." Def. SAP's Reply 8. The Court rejects SAP's arguments. Plaintiffs allege that the IP Agreement was the result, at least in part, of oral communications. *See, e.g.*, Compl. ¶ 25 (referring to "calls" and "discussions" with Musil). Furthermore, plaintiffs allege that the IP Agreement was made in consideration of von Rosing's disclosure of his IP. *See id.* (noting that the IP Agreement was necessary because von Rosing's "initial agreement with SAP did not require disclosure of von Rosing's IP"). The Court concludes that plaintiffs' allegations are sufficient to state a plausible claim for relief for breach of express oral contract(s).

#### 2. *Misappropriation of Ideas*

"The elements of an idea misappropriation claim are that (1) the plaintiff had an idea that was novel and concrete, and (2) his idea was misappropriated by the defendant." *Blackmon v.*

*Iverson*, 324 F. Supp. 2d 602, 607 (E.D. Pa. 2003). SAP argues that plaintiffs have not alleged that von Rosing's ideas were novel and concrete. The Court agrees.

Plaintiffs allege that von Rosing's ideas were "in the form of over 200 proposed substantive additions to ASAP 7.2 as text, charts, and templates." Compl. ¶ 30. The Court concludes that such vague descriptions of plaintiffs' ideas are insufficient for the Court to assess whether those ideas were novel and concrete. *Cf. Riordan v. H.J. Heinz Co.*, No. 08-cv-1122, 2009 WL 2485958, at *6 (W.D. Pa. Aug. 12, 2009) (concluding that plaintiff's description of his idea as "a bottling concept" and a "dual chamber container" were too vague to allege a novel and concrete idea). Accordingly, the Court dismisses this claim without prejudice to plaintiffs' right to file an amended complaint, within twenty days, which states plaintiffs' ideas in greater detail.

3. *Unfair Competition*

Next, SAP alleges that plaintiffs have not stated a claim of unfair competition. In Pennsylvania, unfair competition is "coextensive with the definition set forth in the Restatement (Third) of Unfair Competition." *Eagle v. Morgan*, 11-cv-4303, 2013 WL 943350, at *16 (E.D. Pa. Mar. 12, 2013). "The Pennsylvania Supreme Court has noted that in addition to the traditional scope of 'unfair competition' which limits this tort to the act of 'palming off of one's goods as those of a rival trader,' the concept has been extended in some business settings to include misappropriation as well as misrepresentation."[4] *Hill v. Best Med. Int'l, Inc.*, No. 07-cv-1709, 2011 WL 5082208, at *17 (W.D. Pa. Oct. 25, 2011) (citing *Pottstown Daily News Pub.*

---

[4] SAP argues in its brief that plaintiffs' Complaint should be evaluated under the palming-off theory, not the misappropriation theory. The Court considers the sufficiency of plaintiffs allegations under both theories because "[t]he Federal Rules do not require a plaintiff to set out a legal theory at the pleadings stage, and courts have upheld a complaint against a Rule 12(b)(6) motion to dismiss even though the plaintiff appeared to rely on an inappropriate theory." *Andrews v. Monroe Cnty. Transit Auth.*, 523 F. App'x 889, 891 (3d Cir. 2013).

*Co. v. Pottstown Broadcasting Co.*, 192 A.2d 657, 662 (Pa. 1963)). Furthermore, "in order to state a claim for unfair competition, a plaintiff must allege that it is in competition with the defendant — that is, that the plaintiff and the defendant supply similar goods or services." *Am. Bd. of Internal Med. v. Von Muller*, No. 10-cv-2680, 2011 WL 857337, at *11 (E.D. Pa. Mar. 10, 2011) (internal quotation marks omitted).

The Court concludes that plaintiffs have stated a claim of unfair competition. SAP and plaintiffs supply similar services: von Rosing consults with consumers to customize and improve their enterprise software, *see, e.g.*, Compl. ¶ 14, and SAP provides consumers with ASAP and training services to allow them to customize and improve SAP's software, *id.* ¶¶ 8-9, 15. Furthermore, plaintiffs allege that SAP misappropriated von Rosing's work product when it "literally used von Rosing's IP nearly verbatim," Compl. ¶ 30, in order to "mak[e] various changes and improvements to ASAP 7.2 before it was released," Compl. ¶ 64. These allegations are sufficient to state a plausible claim of unfair competition. *See Restatement (Third) of Unfair Competition* § 1 (1995) ("Other appropriations can be more direct, as when a competitor utilizes the work-product of another in competition with the creator.").

4. *Fraudulent Misrepresentation*

To state a claim for fraudulent misrepresentation under Pennsylvania law, a plaintiff must show (1) a representation, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the misrepresentation, and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). Under Federal Rule of Civil Procedure 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of

9

the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alterations in original) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223-224 (3d Cir. 2004)). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* SAP argues plaintiffs have failed to plead this claim with the required particularity. The Court agrees with SAP on this issue.

Plaintiffs allege that "SAP made *numerous misrepresentations* to von Rosing that it would protect von Rosing's IP." Compl. ¶ 69 (emphasis added). Nowhere does the Complaint specify which representations are fraudulent, however. Given the numerous representations alleged in the Complaint, *see, e.g.*, Compl. ¶¶ 24-33, plaintiffs' allegations do not "place the defendant on notice of the 'precise misconduct'" upon which plaintiffs' fraudulent misrepresentation claim is charged. *Frederico*, 507 F.3d at 200 (alterations in original) (citing *Lum*, 361 F.3d at 223-224). The Court thus dismisses this claim without prejudice to plaintiffs' right to file an amended complaint, within twenty days, specifying which representations were fraudulent.

   *5. Negligent Misrepresentation*

"Although there is disagreement about whether [] negligent misrepresentation claims also fall under Rule 9(b), courts agree that such claims must be plead with 'a degree of specificity.'" *Black v. Cmty. Educ. Ctrs., Inc.*, No. 13-cv-6102, 2014 WL 859313, at *9 (E.D. Pa. Mar. 4, 2014) (DuBois, J.) (quoting *Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-cv-3154, 2012 WL 645905, at *6 (E.D. Pa. Feb. 28, 2012)). SAP again argues that plaintiffs have failed to plead this claim with the requisite specificity, and the Court again agrees. Plaintiffs' allegations of negligent misrepresentation are substantively identical to plaintiffs' allegations of fraudulent

10

misrepresentation, *compare* Compl. ¶ 69, *with* Compl. ¶ 74, and the Court similarly concludes that plaintiffs' allegations of negligent misrepresentation are not sufficiently specific.

   6. *Unauthorized Use of Name*

  Plaintiffs allege that SAP violated Pennsylvania's unauthorized use of name statute, 42 Pa. Const. Stat. § 8316, when SAP affixed von Rosing's name and electronic signature to certificates of class completion without von Rosing's approval. Compl. ¶ 78. To state a claim of unauthorized use of name under Pennsylvania law, a plaintiff must allege, *inter alia*, that their name has "commercial value" and was "used for [a] commercial or advertising purpose." 42 Pa. Const. Stat. § 8316(a).[5] SAP argues that plaintiffs have not alleged either element. The Court disagrees with SAP.

  "Commercial value" is defined in the statute as a "[v]aluable interest in a natural person's name or likeness that is developed through the investment of time, effort and money." 42 Pa. Const. Stat. § 8316(e). In this case, plaintiffs allege that von Rosing is a "recognized leader in enterprise modeling and architecture," Compl. ¶ 8, that von Rosing has provided consulting services in the area of enterprise architecture for at least eight different companies, *id.* ¶ 14, that SAP itself called von Rosing a "subject matter expert[]," *id* ¶ 17, and that SAP called him one of the "key authors on [SAP's] new BPM book," *id.* ¶ 18. The Court concludes that these allegations are sufficient to establish that von Rosing's name has commercial value based on his

---

[5] That subsection provides:

> Any natural person whose name or likeness has commercial value and is used for any commercial or advertising purpose without the written consent of such natural person or the written consent of any of the parties authorized in subsection (b) may bring an action to enjoin such unauthorized use and to recover damages for any loss or injury sustained by such use.

42 Pa. Const. Stat. § 8316(a).

investment of time, effort, and money in becoming an expert in the BPM industry.  *Cf. Eagle*, 2013 WL 943350, at *7 (concluding plaintiff's name had commercial value based on evidence that she had been published and quoted in publications, had presented at conferences, and had extensive experience in the banking-education industry).

The Court also concludes that plaintiffs have alleged that von Rosing's name was used for a "commercial or advertising purpose."  "Commercial or advertising purpose" is defined as including "the public use or holding out of a natural person's name or likeness . . . (ii) for the purpose of advertising or promoting products, merchandise, goods or services of a business."  42 Pa. Const. Stat. § 8316(e)(1)(ii).  In this case, plaintiffs have alleged that "[t]he cost and complexity of implementing SAP software is one of the major hurdles for SAP's software sales efforts," Compl. ¶ 9, that SAP worked with von Rosing "to develop training materials for SAP's customers and employees in subject matters related to [BPM]," *id.* ¶ 15, that SAP sent an email informing people "of SAP's new BPM curriculum and certification," *id.* ¶ 17, and that von Rosing taught the course "at SAP's offices in Holland," *id.*  Based on these allegations, the Court concludes that plaintiffs have alleged that SAP's use of von Rosing's name on a certificate of class completion for SAP's BPM course was "for the purpose of advertising or promoting" SAP's training services and software.  42 Pa. Const. Stat. § 8316(e)(1)(ii).  Accordingly, plaintiffs have stated a claim for unauthorized use of name under 42 Pa. Const. Stat. § 8316.

### C.  Limitation of Damages

Plaintiffs request damages in the form of, *inter alia*, disgorgement of profits, punitive damages, and an injunction prohibiting any unauthorized use of von Rosing's name.  Compl. ¶ 82.  SAP argues that plaintiffs' damages should be limited to contractual damages, but admits that the plaintiffs' "non-contract damages stand or fall with the non-contract claims."  Def.

SAP's Reply 11. Because the Court concludes that several of plaintiffs' "non-contract" claims remain in the case, plaintiffs' requests for non-contract damages likewise remain in the case.

SAP also argues that, because plaintiffs do not plead liquidated damages, their request for prejudgment interest should be dismissed. SAP acknowledges, however, "that prejudgment interest may be awarded in the discretion of the Court if [plaintiffs] prevail and satisfy the applicable equitable factors."[6] Def. SAP's Reply 11. On the present state of the record, the Court cannot fully assess those factors, and, thus, the Court does not dismiss plaintiffs' request for prejudgment interest.

### D. Doe and Roe Defendants

SAP argues that the Court should strike the Doe and Roe defendants because "there are no actors who Plaintiffs have not been able to identify" and that "[p]laintiffs make no factual allegations against the Doe and Roe Defendants other than that they 'are responsible in some manner.'" Def. SAP's Mot. to Dismiss 20 (ECF No. 23-1) (quoting Compl. ¶ 5). Plaintiffs argue that "SAP has no idea what Plaintiffs know and do not know," and that "[u]ntil discovery is taken to confirm all of the various SAP entities upon whose behalf the SAP representatives were speaking, emailing, and acting, von Rosing cannot confirm whether all responsible persons or parties have been identified and named." Pls.' Mem. in Opp. 28-29 (ECF No. 25).

---

[6] Those factors are:

> (1) the diligence of the plaintiff in prosecuting the action;
> (2) whether the defendants have been unjustly enriched;
> (3) whether the award would be compensatory;
> (4) whether there are countervailing equitable considerations which militate against an award of prejudgment interest.

*Vanalt Elec. Const., Inc. v. Selco Mfg. Corp.*, No. 03-cv-6741, 2008 WL 63245, at *2-3 (E.D. Pa. Jan. 3, 2008).

The Court agrees with plaintiffs. "[F]ictitious party names may be used at least until reasonable discovery permits the actual defendants to assume their places." *Atl. Used Auto Parts v. City of Phil.*, 957 F. Supp. 622, 625 (E.D. Pa. 1997) (internal quotation marks omitted). Accordingly, at this stage of the proceedings, the Court will not dismiss or strike the claims against the Doe and Roe defendants. SAP may raise the issue by motion for summary judgment after completion of discovery.

## V.  CONCLUSION

For the foregoing reasons, the Court grants SAP's Motion to Dismiss as to plaintiffs' claims of Misappropriation of Ideas, Fraudulent Misrepresentation, and Negligent Misrepresentation. These dismissals are without prejudice to plaintiffs' right to file an amended complaint, within twenty days, if warranted by the facts and applicable law. The Court denies SAP's motion in all other respects.

An appropriate order follows.